HARRISON et al. v. SMITH.

(Circuit Court of Appeals, Third Circuit. April 26, 1895.)

No. 8.

DEMURRAGE—DISCHARGE OF CARGO—"CUSTOMARY QUICK DISPATCH"—METHOD OF WEIGHING.

"Customary quick dispatch" at the port of Philadelphia, in unloading a cargo of sugar, requires the use of platform scales for weighing, and is not complied with by the use of the tedious method of weighing on "sticks." 50 Fed. 565, affirmed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel by George Smith, master of the steamship Black Prince, against Charles C. Harrison and others, trading as Harrison, Frazier & Co., to recover demurrage because of alleged failure to receive cargo with "customary quick dispatch." The district court rendered a decree for the libelant. 50 Fed. 565. Respondents appeal.

G. Heide Norris and Henry R. Edmunds, for appellants.

Horace L. Cheyney and John F. Lewis, for appellee.

Before ACHESON, Circuit Judge, and GREEN and BUFFINGTON, District Judges.

ACHESON, Circuit Judge. The steamship Black Prince was chartered to carry a cargo of sugar from Cuba to the port of Philadelphia, under a charter party which provided that the vessel was "to be discharged with customary quick dispatch at port of discharge." The charter stipulated that for each day's detention the vessel should receive a specified sum, and it gave the charterers the right to designate the wharf where the discharge should take place, and to name the stevedore. The vessel, with a cargo of 14,533 bags of sugar, weighing about 2,000 tons, arrived at the port of Philadelphia on Saturday, March 8, 1890, and was entered at the customhouse, and notice of her arrival duly given about 3 o'clock on the afternoon of the same day. The vessel was not ordered to a berth until 3 o'clock on the afternoon of the following Monday, March 10th. By 6 o'clock the same afternoon the vessel was moored at the wharf to which she was ordered, with all necessary preparations made to discharge from four hatches. The discharge of cargo did not begin until 1 o'clock on Tuesday afternoon, March 11th, and was not completed until Thursday, March 20th, at noon. The commissioner to whom the case was referred to fix the demurrage, and whose conclusions the court below approved, reported:

"A careful consideration of the evidence convinces the commissioner that at least 5,000 bags each day could have been discharged from this vessel from one hatch by the use of platform scales, and with ordinary energy and diligence."

Upon that basis it was held that the discharge of cargo should have been completed by the close of Thursday, March 13th, and demurrage was decreed against the appellants for all detention beyond that date.

Instead of using platform scales, the appellants weighed the sugar, as it was taken from the vessel, on "sticks," which was a very tedious method, and the discharge was only from one hatch at a time. The owners of the ship, it is to be noted, had no interest whatever in the weighing of the sugar. That was a matter between the appellants and the United States government. Now, the stipulation here, it will be perceived, was not to give the vessel simply ordinary dispatch or customary dispatch. Something more

was intended and provided for. The agreement was that the vessel should "be discharged with customary *quick* dispatch at port of discharge." The stipulation contemplated haste, and, if the sugar was to be weighed as taken from the vessel, required the resort to such well-known, approved, and commonly practiced method of weighing at the port of discharge as would secure to the vessel ordinary quick dispatch. The learned district judge found as a fact that customary quick dispatch at the port of Philadelphia, in the discharge of sugar, where the cargo is to be weighed as delivered, is such dispatch as can only be afforded by the use of platform scales in weighing. The evidence fully justifies that finding. At the date of this charter party, and for at least two years previously, it was the almost universal practice at the port of Philadelphia to weigh sugar as discharged from vessels on platform scales, and not more than one cargo in twenty was weighed on sticks. The testimony of the experienced witnesses examined in this case quite satisfies us that the appellants did not give to the Black Prince the customary quick dispatch for which her owners had contracted.

The amount of demurrage allowed seems to us to be entirely reasonable, under the evidence.

We find no error in this record, and therefore the decree of the district court is affirmed.